**In re Ronald E. BRILEYA and Alta B. Brileya, Debtors.**

**Bankruptcy Nos. 89–159, 89–160.**

United States Bankruptcy Court, D. Vermont.

Oct. 12, 1989.

J. Carroll, Kelley, Meub, Powers & English, Ltd., Rutland, Vt., for Gene and Anita Willey. (Willeys).

R. Dutil, Brandon, Vt., for Depot Farm Supply, Inc.

T. Maikoff, Rutland, Vt., Chapter 12 trustee, pro se.

M. Palmer, Michael Palmer & Associates, Middlebury, Vt. and G. Glinka, Bertolini, Benning & Glinka, Cabot, Vt., for Ronald and Alta Brileya.

## MEMORANDUM OF DECISION ON OBJECTION TO SALE

FRANCIS G. CONRAD, Bankruptcy Judge.

Debtors noticed an intent to sell 31 acres of land under a purchase and sale agreement with a one-year option. Objections, if any, were to be filed by September 15, 1989. Two mortgagees, the Willeys and another creditor (Depot Farm Supply, Inc.) not pertinent to this decision, timely filed objections. At a September 27, 1989 hearing,[1] we heard argument of all parties on the objections to sale, together with argument regarding Debtors' motion for joint administration and Willeys' motion for removal of the debtor in each case as a debtor-in-possession (DIP). The Chapter 12 trustee did not object to the sale. An expedited briefing schedule was ordered, and the matter was taken under advisement on October 10, 1989. Because we find the Willeys are adequately protected, the objection to sale is denied.

Willeys' objection to sale advanced three arguments: the Chapter 12 trustee has the sole authority to sell farmland; property of the estate should not be sold absent a determination of whether the debtors qualify as family farmers or before the motion for removal of the debtors as DIP's is resolved; and, the sale would potentially encumber the property for a year.

■ We address the arguments in reverse order. We fundamentally agree the

purchase and sale agreement could potentially encumber the property under the one-year option.[2] We cannot see, however, any injury running to Debtors, their creditors, or the estate under the one-year option. The option payment will provide Debtors with needed cash flow and will assist in the sale of property Debtors consider unnecessary to their farming operation. With the lien to attach to the sales proceeds, and continuing to attach to the remaining unsold acreage, the Willeys are adequately protected. Accordingly, we find that the sale, although it will encumber the property for a year, is in the best interest of Debtors, their creditors, and the estate.

The objections based on jurisdiction and removal of Debtors as DIP's are hotly contested. We ordered from the bench under Rules of Practice and Procedure in Bankruptcy Rule 9014 that these contested matters shall be governed by Part VII of the Rules. The parties' discovery is not completed. We don't believe a sale, with option, if approved, need be delayed based upon these objections. Accordingly, we defer their consideration for another day.

■ Willeys' argument which gave us pause at the September 27, 1989 hearing was explicated in this manner:

Nowhere in Section 1203, nor in the relevant sections of Chapter 11, is the debtor in possession given authorization to sell farmland. Because Section 1206 specifically authorizes the trustee to sell farmland, and because the debtor in possession is never expressly given such authority, it therefore follows that the Debtors in this case are not authorized by the Bankruptcy Code to sell the farmland in issue.

Willeys' "Memorandum in Support of Notice of Objection to Notice of Intent to Sell Land," at page 2. The argument misapplies as well as misconstrues the law. The

---

**1.** We have jurisdiction to hear this matter under 28 USC § 1334(b) and the General Reference to the Court under Part V of the Local District Court Rules for the District of Vermont. This matter is a core proceeding under 28 USC § 157(b)(2)(N). This Memorandum of Decision constitutes findings of fact and conclusions of law under F.R.Civ.P. 52 as made applicable by Rules of Practice and Procedure in Bankruptcy Rule 7052.

**2.** This argument was addressed from the bench at the September 27, 1989 hearing and is discussed here to ensure completeness of the decision.

real issue in this matter is adequate protection. 11 USC § 1203 provides that the debtor-in-possession shall have all of the rights and powers of a trustee serving in a Chapter 11 case, other than a right to compensation under § 330, including the right to operate the debtor's farm. The powers of a Chapter 11 trustee are set forth in 11 USC §§ 1106(a) and 1108. A debtor-in-possession may use, sell, or lease property of the estate under § 363. Any sale outside the ordinary course of the debtor's business, such as the sale of farmland, cannot be made without notice and a hearing, and then only with Court approval. 11 USC § 363(b)(1).

A § 363(b)(1) sale is governed by §§ 363(f), 363(d), and 363(e). A sale under § 363(f) allows a debtor-in-possession to sell property free and clear of any interest in the property if: applicable nonbankruptcy law permits a sale free and clear of the interest; the entity with the interest consents; the interest is a lien and the price at which the property is to be sold exceeds the total value of all loans on the property; such interest is in bona fide dispute; or, the entity with an interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. Section 363(b) is further limited by the adequate protection requirements of §§ 363(d) and (e) as provided in § 1205. Section 1205 makes it clear that what needs to be protected is the value of the property, not the creditor's "interest" in the property. H.R.Conf.Rep. No. 99–958, 99th Cong., 2d Sess. 49–50 (1986). More often, adequate protection in connection with a sale free and clear of other interests will be provided by attaching those interests to the proceeds of the sale. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 345–46 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 55 (1978) U.S.Code Cong. & Admin.Code 1978, pp. 5787, 5841, 5963, 6301, 6302.

11 USC § 363(f) is also modified by § 1206, Sales free of interests, which provides:

> After notice and a hearing, in addition to the authorization contained in section 363(f), the trustee in a case under this chapter may sell property under section 363(b) and (c) free and clear of any interest in such property of an entity other than the estate if the property is farmland or farm equipment, except that the proceeds of such sale shall be subject to such interest.

This section modifies § 363(f) to allow family farmers to sell assets not needed for the reorganization prior to the confirmation without the consent of the secured creditor, but subject to Court approval. This section also explicitly indicates that the creditor's interest (which includes a lien[3]) would attach to the proceeds of the sale. Section 1206 also allows a Chapter 12 debtor to scale down the size of its farming operations by selling unnecessary property. See, H.R.Conf.Rep. No. 99–958, 99th Cong., 2d Sess. 50 (1986).

Willeys' argument that § 1206's use of the word "trustee" refers to the Chapter 12 trustee has some support. Specifically, the Willeys point to *Bankruptcy Law Fundamentals*, by Robert I. Aaron, § 15.04(2). In § 15.04(2), Aaron says: "[t]he trustee may sell farmland by the special power in Chapter 12. The fact that the trustee holds such power, and not the debtor in possession, is an obvious invitation to conflict." Willeys' "Memorandum in Support of Notice of Objection to Notice of Intent to Sell Land," at page 3.

*Collier on Bankruptcy* also sides with the Willeys.

> The authority granted under section 1206 was provided to the trustee rather than to the debtor. The legislative history of section 1206 provides no indication of why the authority was not granted to the debtor. The reference in section 1206 to the trustee cannot be read as a reference to the debtor as debtor in possession since the rights of the debtor and the rights of the trustee in a chapter 12 case are set forth separately on a section-by-

---

**3.** We are not sure why Congress seems to indicate that a creditor's interest under this section may include something other than a lien, but because it is not necessary to our holding, we do not address it.

section basis. There is no provision in chapter 12 allowing the debtor in possession to exercise all of the powers of a chapter 12 trustee since a trustee also serves in each case.

It must be presumed, in the absence of any evidence to the contrary, that Congress' vesting of this power in the trustee rather than the debtor was an international choice and not a drafting error. It is possible that Congress granted this authority to the trustee instead of the debtor in order to prevent the debtor from engaging in collusive or ill-advised sales. If the debtor is required to obtain the trustee's approval for a sale, the trustee will have the opportunity to analyze the sale and determine the impact of the sale on the bankruptcy estate and on the debtor's plan. Perhaps an additional reason stems from the debtor's unqualified right to dismiss the chapter 12 case. *It would be unfair to a creditor to allow the debtor to sell encumbered property for less than the amount of the outstanding liens and then to dismiss the case prior to obtaining confirmation of a plan.* Even if the debtor cannot convince the trustee to authorize a sale under section 1206 and apply to the court for approval of the sale, the debtor still retains the right to sell the property free and clear of liens under section 363(f). The debtor's plan may also provide for sale of the property, although a sale pursuant to a plan will not be free and clear of liens.

*Collier on Bankruptcy*, 15th Ed., § 1206.01 (Rel 31–9/89) (footnotes omitted).

We disagree with both Aaron and Collier. Contrary to Collier's conclusion that the reference to a trustee cannot be read as a reference to the debtor-in-possession, we hold that it can be read in that manner. For support, we have the legislative history to § 1206 and the cross-reference to § 363(f) which includes an obvious reference to a DIP. Finally, we point to § 1202 which provides the trustee with standing to be heard on sales of property.

Section 1206, standing alone, states that the trustee may sell property. But, despite the first blush simplicity of those words, we may rightfully, instinctively, and/or necessarily delve beyond a statute into its legislative history to compliment our initial understanding of its meaning. See, N. Singer, *Sutherland Statutory Construction*, § 48.01, at 778. (rev'd 4th Ed.1984) ("[T]he plain meaning rule ... is not to be used to thwart or distort the intent of Congress by excluding from consideration enlightening material from the legislative files."). For § 1206, Congress said:

> This section modifies 11 USC § 363(f) to allow *family farmers* to sell assets not needed for the reorganization prior to confirmation without the consent of the secured creditor subject to approval of the court.

H.R.Conf.Rep. No. 99–958, 99th Cong., 2d Sess. 50 (1986) (emphasis ours).

Congress has expressed its intent that the reference to a "trustee" in § 1206 be a reference to the debtor-in-possession, namely the family farmer, and we so hold.

Section 363(f), referenced in § 1206 and its accompanying legislative history, also contains the word "trustee." We are unable to find any cases that hold a DIP would not be able to sell its own property because of the use of the word "trustee." Thus, the reference in § 1206 must be a reference to a DIP and not to the Chapter 12 trustee.

Finally, a Court is required, when possible, to give meaning to every part of a statute. Moreover, we should reconcile a statute to avoid conflict, especially the one Aaron envisions between the Debtor and the Chapter 12 trustee. Our interpretation avoids the conflict.

Section 1206 modifies § 363(f) so the debtor can sell assets not necessary to the reorganization without the secured creditor's consent. Section 1202(b)(3)(D) allows the trustee to appear and be heard about the sale of property of the estate. In essence, the debtor must obtain the trustee's consent to the sale. If we were to hold, as the Willeys suggest, that the trustee has the sole authority to sell farmland, then § 1202(b)(3) would be surplusage. Our holding avoids this result, and provides meaning to all sections of the statute.

The real issue in this matter is adequate protection. Debtors argue that their mortgagees are adequately protected. The Willeys argue they are not. No evidence was introduced at the September 27, 1989 hearing because of time constraints; however, counsel for all sides and the Court engaged in a colloquy about the amount of the property liens and the value of the property being sold and retained.

We learned from Debtors' counsel, by representation, that the aggregate debt in the property is about $75,000; the entire debt is disputed by Debtors. The Willeys say the debt is closer to $107,000. The Willeys base their estimate on a variety claims including the mortgage.

Debtors state that the property being sold has a sales price (sale plus option) of $2,258.00 per acre, and that the fair market value of the remaining property is conservatively appraised at $1,500.00 to $2,000.00 an acre. The Willeys claim the value remains in dispute because no evidence on value was taken at the hearing. While this statement is correct, and knowing Debtors have the burden of proof on adequate protection, we commented from the bench that no farm property located in Addison County, Vermont having come before us, has appraised at less than $600.00 an acre. We went on to say that even if we were to multiply the remaining acreage by the $600.00 per acre price, the total value would be $105,000. This value exceeds Debtors' estimate of the secured creditors' interest and is slightly below Willeys' claims estimate.

We have a solution to Debtors' immediate urge to sell the property and Willeys' desire to stop the sale. Section 1206 allows the DIP to sell unnecessary property without the consent of the secured creditor. Unlike § 363(f), which suggests that the secured creditors liens may attach to the sales proceeds, § 1206 mandates the liens attach to the proceeds. In the matter before us, the property in toto has a reasonably estimated value of $175,000 ($105,000 estimate + $70,000 actual from the purchase and sale agreement, with option). Liens on the property are $107,000. The actual sale, if the option is exercised, may not take place before a year has passed. Until the option is actually exercised, the Willeys are adequately protected by a substantial equity cushion. Moreover, even though the Willeys have an interest in the property which is the subject of the option, we don't believe they have an interest in the option. We are aware of the possibility that a debtor could make the option price so high as to make the exercise price valueless. But, no sale can be made without our approval. The high option tactic, if attempted, would surely be brought to our attention under the trustee's § 1202(b)(D) powers. The option price here represents 10% of the selling price. It is not an unreasonable option. Accordingly, we will allow Debtors to give an option on 31 acres and allow them to keep the $7,000 option payment for use in the farm operation. Before the option is exercised, however, and assuming Debtors do not intend the property liens to attach to the proceeds, they must come forth at an evidentiary hearing and carry their burden of proving the secured creditors are adequately protected. An appropriate order will be entered.