**In re Delbert NEFF, Debtor.**

**Bankruptcy No. 2–87–01838.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

Jan. 23, 1989.

William B. Logan, Jr., Luper, Wolinetz, Sherriff & Neidenthal, Columbus, Ohio, for The Farm Credit Bank of Louisville.

Charles W. Ewing, Columbus, Ohio, for debtor.

Frank M. Pees, Worthington, Ohio, Trustee.

## ORDER ON MOTION TO ALTER OR AMEND COURT'S ORDER ON OBJECTION TO CONFIRMATION

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court on a motion filed on behalf of the Federal Land Bank of Louisville, now known as The Farm Credit Bank of Louisville ("FCB"). FCB's motion requests this Court to reconsider and alter certain findings set forth in an order entered June 13, 1988, now published as *In re Neff*, 89 B.R. 672 (Bankr.S. D.Ohio 1988). FCB's motion was opposed by Delbert Neff, the debtor in this Chapter 12 case. The matter was heard by the Court on November 8, 1988.

The Court has jurisdiction in this contested matter under 28 U.S.C. § 1334(b) and the General Order of Reference previously entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L) in which this Bankruptcy Judge may enter a final order.

FCB wants this Court to change its determination of June 13, 1988 that a Chapter 12 debtor is permitted, under the provisions of Chapter 12 of the Bankruptcy Code, to surrender statutory stock in FCB and thereby reduce the allowed secured claim of FCB which must be repaid through a Chapter 12 plan. For reasons stated in the record at the conclusion of the November 8, 1988 hearing and adopted herein as if rewritten, the Court believes its order of June 13, 1988 was correct on the stock redemption issue. Accordingly, FCB's motion for alteration or amendment of the Court's order on that issue is denied.

■ FCB further seeks amendment or alteration of the Court's prior order on the issue of the discount factor required to be applied to FCB's allowed secured claim pursuant to 11 U.S.C. § 1225(a)(5)(B)(ii) to yield "value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim" which is "not less than the allowed amount of such claim."

In its prior order, the Court determined that such rate should be the average rate charged by commercial banks with significant lending in the agricultural market for long-term loans secured by real estate as shown by the most recent available Federal Reserve Bank's Quarterly Survey of Agricultural Credit Conditions (the "Survey Rate"). As such rate does not appear to be available for this specific geographic region, the Court held that a blend of the rate for two districts most similar to this district, the Fifth & Seventh Federal Reserve Districts, could be used. Based upon that ruling, the debtor submitted a third amended Chapter 12 plan which proposed a discount factor of 10.65%, amortized over a thirty year period. The rate sought by FCB is approximately two percentage points higher than the Survey Rate.

FCB asserts that the Survey Rate is not appropriate because FCB has a significant portion of the agricultural lending market and its rates are different from those of commercial banks. FCB argues that the ratio of loan amount to collateral value is different in a Chapter 12 setting from that of a more normal loan and that such fully

collateralized loans mean more risk for the lender, thereby calling for a higher discount factor. Further, FCB maintains that its rates vary for different borrowers and the higher risk category into which this debtor/borrower falls should affect the discount factor required.

The Court believes that a forced loan in the context of a reorganization proceeding is somewhat hypothetical by its nature. If debtors could walk into a financial institution and take out a new loan with average market rates, they probably would not be in a reorganization proceeding. Congress has determined that reorganization is a legislatively preferred remedy, however, and in Chapter 12 the purpose for that remedy is to give family farmers the ability to rehabilitate their businesses. While implementation of that remedy requires fundamental fairness to creditors and other parties in interest in a constitutional sense, protection of the creditor's usual profit margin is not the focus of § 1225(a)(5). Further, availability of the remedy requires spreading loss risks among the creditor body including private lenders, governmental institutions and agencies, and partially subsidized quasi-governmental institutions such as FCB.

It is this Court's perception that FCB has engaged in a continuous effort since the enactment of Chapter 12 to shape the Chapter 12 remedy to its advantage. While each party in a case is certainly free to pursue its own interests in this manner, it sometimes appears incongruent for a publically subsidized institution to actively challenge numerous aspects of a legislatively mandated remedy affecting its clients. The Court is also aware that Chapter 12 debtors can ill afford the litigation costs associated with such activities. Nevertheless, this Court has determined to consider the various arguments of FCB to the fullest, consistent with the remedial nature of Chapter 12.

The Court has reviewed the testimony and exhibits admitted in the November 8, 1988 hearing and has considered the arguments of counsel. Based upon such consid-

erations, the Court determines to alter its prior order in a limited fashion.

Specifically, the Court holds that a market rate most appropriate for application to FCB's secured claim should take into account FCB's internal average rate to the extent of FCB's share of the market for long-term loans secured by agricultural real property. The Survey Rate will be used for all other segments of that market because the commercial bank rates included therein represent a significant share of the market for which information on market rates can be obtained. This formula may be altered in future cases as average rates are established for other significant lenders in the agricultural sector whose rates are driven by the market, such as life insurance companies, commodity credit storage facilities, individuals and others.

■ The Court will not alter its prior holding that the market rate for application to an allowed secured claim in a Chapter 12 proceeding should be the average rate for an average borrower which assumes an acceptable loan amount to collateral value ratio. Given the philosophy of reorganization implemented by the enactment of Chapter 12, the sheer difficulty of determining the eligibility factors for each affected debtor present in this Court, the hypothetical nature of the involuntary loan itself and the improvement in the debtor's financial status caused by the confirmation of a Chapter 12 plan which calls for forgiveness of most unsecured debt upon completion of the plan, the Court finds that the reorganized debtor is sufficiently close to an "average" borrower to be thus considered. If factors exist in a particular case which raise issues of good faith, that result may differ. *See Memphis Bank & Trust Co. v. Whitman (In re Whitman)*, 692 F.2d 427, 431 (6th Cir.1982). Nor will "points" or "closing costs" be added to the rate as most services underlying those charges should not be relevant in the context of a reorganization proceeding.

■ Accordingly, the Court finds, where the secured lender is the Farm Credit Bank, that the discount rate to be applied to its allowed secured claim in a Chapter 12

case shall be determined by a blend of FCB's average rate and the average rates of other lenders in the farm market for long-term fixed rate loans secured by agricultural real property, as known to the Court. In this case, the evidence indicated FCB has a 30–35% share of the Ohio segment of the applicable market and an average long-term rate of 12.25% on September 18, 1987, the date agreed by the parties as determinative. That blend in this case will be computed by factoring in the applicable FCB rate to the extent of 33⅓% and the Survey Rate to the extent of 66⅔%. On that basis, the 10.65% factor for the Survey Rate must be doubled and the FCB rate of 12.25% must be added once. That total, when divided by three, yields a discount factor for FCB's secured claim in this case of 11.18%.

■■■ For reasons expressed in its prior order, the Court makes no change in the discount rate for the high leverage of the loan or for any specific risk attributable to the presence of the debtor in a Chapter 12 case, and the Court declines to reconsider its former opinion in that regard. See *In re Neff*, 89 B.R. at 680. Variations from that standard in particular cases may still be appropriate if unusually compelling facts exist. The Court does not contemplate evidentiary hearings to establish such variations in the average case, however. Evidence may be received in other cases not yet confirmed for the purpose of establishing and factoring in the average rates of other lending segments of the market. In all cases where such rates are not known, the Survey Rate will be used.

Based upon the foregoing, FCB's motion for alteration or amendment of the Court's prior order is granted in part and denied in part. The debtor is given twenty (20) days to amend his plan to conform to the Court's findings. After such amendment an order of confirmation will issue and no further rehearings will be had in this case.

IT IS SO ORDERED.