**In re Sharon E. KERWIN–WHITE, Debtor.**

**Bankruptcy No. 88–179.**

United States Bankruptcy Court, D. Vermont.

May 23, 1991.

J. Barrera, Middlebury, Vt., for Estate of Laura Thompson.

J. Carroll, Powers, English & Carroll, Ltd., Middlebury, Vt., for First Brandon Nat. Bank.

G. Glinka, Glinka & Palmer, Cabot, Vt., for Sharon E. Kerwin–White, debtor.

T. Maikoff, Chapter 12 Trustee, pro se.

K. Purcell, Albany, N.Y., for U.S. Trustee.

## MEMORANDUM OF DECISION ON CONFIRMATION OF CHAPTER 12 PLAN [1]

FRANCIS G. CONRAD, Bankruptcy Judge.

This matter is before us on remand from the District Court and Debtor's modification of its Chapter 12 reorganization plan. We confirm Debtor's plan as modified.

### BACKGROUND

Debtor and spouse operated a 138 acre dairy farm in Bridport and Cornwall, Vermont for several years. In 1988, Debtor encountered financial and marital difficulties (now divorced), and undertook to reorganize the dairy farm as a sheep farm. On August 12, 1988, Debtor commenced a Chapter 12 bankruptcy proceeding, 11 USC § 1201, et seq.[2]

Bank has a first mortgage on Debtor's real and personal property for $84,600.

Debtor's initial Chapter 12 plan, 11 USC § 1222, proposed a 100% payment to allowed unsecured creditors, payable in monthly installments over a five year period. Debtor's plan also proposed a full present value payment to senior secured creditors. The present value payment would be made either through installments or by the surrender of collateral up to the value of the secured debt. Debtor's second and third real property mortgagees would, in turn, move up to first and second positions, respectively, and be paid in full.

Unhappy with Debtor's proposed treatment under the plan, Bank objected and, after a contested evidentiary confirmation hearing, we ruled from the bench that Debtor must surrender 118 acres in full satisfaction of Bank's secured claim.

Debtor would retain the remainder of 20 acres subject to the respectively advanced second and third mortgagees.

Bank appealed our ruling on five grounds:

1. Debtor was not a "family farmer" under 11 USC § 101(17);
2. We erred by holding 11 USC § 1225(a)(5)(C) authorized Debtor to surrender less than all of the collateral without allowing Bank to retain a lien on the unsurrendered portion;
3. Our valuations of the Bridport and Cornwall properties were clearly erroneous;
4. Bank, as an over-secured creditor, is entitled to attorney fees by agreement and 11 USC § 506(b); and,
5. Bank is entitled to recover appraisal costs as an administrative expense under 11 USC § 503(b)(1)(A).

On appeal to the District Court, Chief Judge Billings reversed in part, affirmed in part, and remanded. *First Brandon National Bank v. Kerwin–White*, 109 B.R. 626 (D.Vt.1990). Chief Judge Billings held:

1. Bank waived its objection to Debtor's eligibility as a "family farmer" because they "neglected to raise it before the bankruptcy court." *Id.*, 109 BR at 629;
2. Debtor must either surrender all of its collateral to Bank under 11 USC § 1225(a)(5)(C) or, alternatively in a "cram-down" under 11 USC § 1225(a)(5)(B), surrender a portion of Bank's collateral up to the value of its debt and allow Bank to retain a lien on the unsurrendered portion of its collateral because Bank is an over-secured non-consenting creditor;

---

**1.** We have subject matter jurisdiction under 28 USC § 1334(b) and the general reference to this Court under VLBR 7012, Part V of the United States District Court Rules for the District of Vermont. This is a contested matter under Rules of Practice and Procedure in Bankruptcy Rule 9014 and we determine it is core under 28 USC §§ 157(b)(2)(A), (L), and (O). This Memorandum of Decision constitutes findings of fact and conclusions of law under F.R.Civ.P. Rule 52, as made applicable by Rules of Practice and Procedure in Bankruptcy Rule 7052.

**2.** In 1986, Congress enacted Chapter 12 of the Bankruptcy Code, entitled "Adjustment of Debts of a Family Farmer with Regular Annual Income." *Bankruptcy Judges, United States Trustees and Family Farmer Bankruptcy Act of 1986*, Pub.L. No. 99–554, § 255, 100 Stat. 3105–3114 (codified as amended in various sections of 11 USC and 28 USC). Unless extended by Congress, the Family Farmer Bankruptcy Act of 1986 has a sunset date of October 1, 1993.

3. In *dicta*,[3] affirmed our valuation on the Bridport property as not clearly erroneous because it was supported by evidence. Reversed the Cornwall valuation because it could not "discern [our] basis for its conclusion" to average comparables;

4. In *dicta*,[4] affirmed our determination Bank was not entitled to attorney fees because their agreements provide for such fees only in the event of foreclosure and "cannot be interpreted as authorizing attorney fees in bankruptcy proceedings." *Id.*, 109 BR at 633; and,

5. Affirmed our denial of Bank's request for its cost of appraisal under 11 USC § 503(b)(1)(A) because Bank failed to meet its burden that such costs "were necessary to preserve its own interest in the estate." *Id.*, 109 BR at 633.

Debtor appealed to the Second Circuit Chief Judge Billings' holding that a Chapter 12 plan could not provide for a surrender of less than all of the collateral in satisfaction of an oversecured creditor's claim without also providing a lien on the unsurrendered collateral. Debtor also appealed the District Court's reversal of our valuation on the Cornwall property. Bank cross-appealed. After some procedural discussions at the Circuit level about finality, Bank and Debtor withdrew their respective appeals without prejudice, and returned the case to this Court.[5]

Upon return to us, Debtor filed its "Motion to Modify Plan of Reorganization" on April 19, 1990. Debtor added the following language to paragraph 6.4 of the plan: *"claimant [Bank] shall retain its lien on the remaining property as security for any deficiency." Id.*, p. 1 (emphasis in original).

On June 6, 1990, we held a telephonic status conference where we overruled Bank's contention that a new plan of reorganization and *de novo* hearing were needed. We ruled, *inter alia*,[6] a plan modification would suffice and scheduled a hearing on the modification only.

On August 20, 1990, we heard all pending motions, including Debtor's "Motion to Modify Plan of Reorganization," Chapter 12 Trustee's request for a ruling on distribution of funds received under the plan,[7] and Bank's Motion to Dismiss Debtor's Chapter 12 case.[8] A post-hearing briefing schedule was fixed, after which we took all remaining issues under advisement.

## CLAIMS OF THE PARTIES

Debtor and Bank briefed the following claims:

1. Bank argues Debtor must either surrender all of Bank's collateral under § 1225(a)(5)(C), or Bank must retain its lien on the unsurrendered portion

---

**3.** The District Court acknowledged that it did not need to address the valuation and allowance of fees issue because of its reversal. "Nonetheless, the bankruptcy court's holdings concerning the value of the property and allowance of fees will no doubt significantly affect the preparation of a new plan; thus, in the interest of judicial economy, the court believes it is necessary to proceed." *First Brandon National Bank v. Kerwin–White, supra*, 109 B.R. at 631, n. 4.

**4.** *See*, footnote 3, *supra*.

**5.** *See, Bowers v. Connecticut National Bank*, 847 F.2d 1019, 1023 (2d Cir.1988) (Courts of Appeals lack jurisdiction over appeals from orders of District Courts remanding to Bankruptcy Courts for significant further proceedings). Debtor claims it "has expressly reserved the right of subsequent appeal to the Court of Appeals on both these issues." Presumably, Bank has done likewise. See also, *Consumer News and Busi-*

*ness Channel Partnership v. Dow Jones/Group W Television Co.* (*In re Financial News Network, Inc.*), 931 F.2d 217, 220 (2d Cir.1991).

**6.** We also ruled the evidentiary record was adequate for purposes of revisiting our Cornwall property valuation. On June 21, 1990, we issued a Memorandum of Decision and Order on the valuation wherein we revised downward our original per acre valuation from $2,700 to $2,100. We denied Bank's Motion to Reconsider our valuation ruling on July 12, 1990. Bank filed a notice of an appeal on August 1, 1990. We stayed the effect of our valuation ruling until the issuance of the instant Decision to allow all issues to be resolved in one appeal.

**7.** At the hearing we ordered Trustee to withhold any payments made under the plan pending further direction from the Court.

**8.** Bank's Motion to Dismiss was withdrawn.

**378**

pending sale of the surrendered property under § 1225(a)(5)(B). Debtor counters that a Chapter 12 debtor may satisfy an oversecured creditor by

9. This issue has been decided by our District Court. *First Brandon National Bank v. Kerwin–White, supra,* 109 B.R. at 630. The District Court held a Chapter 12 debtor may satisfy a fully secured or over-secured creditor by a partial surrender of collateral up to the full value of the creditor's allowed claim only if the creditor is allowed to retain a lien on the unsurrendered collateral as additional security in the event of a potential deficiency upon sale of the surrendered collateral. *Id.* We are bound by the District Court's Decision on this issue under the doctrine of the "Law of the Case." *See, United States v. Cirami,* 563 F.2d 26, 32 (2d Cir.1977) ("When an appellate court has decided an issue, the trial court, at a later stage of the litigation, is under a duty to follow the appellate court's ruling on that issue."); *Munro v. Post,* 102 F.2d 686, 688 (2d Cir.1939) ("Law of the Case" also applies to issues that have been decided "either expressly or by necessary implication."). Our Order approving Debtor's Chapter 12 plan will, of course, follow Judge Billings' directive.

We acknowledge that the following discussion is *dicta,* but because we believe the "eat dirt" issue is significant to land-rich, but bankrupt, Vermont farmers, we take the opportunity to pen the rationale for our prior bench ruling to provide the District Court with a more comprehensive view, and to satisfy the request of all parties that we do so to ensure a complete record on appeal.

First, we believe the District Court overlooked the application of 11 USC § 506. It is our view that Bank, as an over-secured creditor with an allowed secured claim, is entitled to receive the value of its allowed secured claim together with whatever it may be entitled to receive under § 506(b). The excess collateral may belong to the debtor or be used to satisfy other creditors.

Second, we believe 11 USC §§ 506, 1225(a)(5)(C), and 1222(b)(7) and (8) can and ought to be harmonized rather than approached under the District Court's more restrictive ruling on § 1225(a)(5)(C). Moreover, our view is supported when §§ 1225(a)(5)(C) and 1222(b)(7) and (8) are read in *pari materia* with the corresponding provisions in Chapters 11 and 13.

Third, the parties assure us they will exhaust their respective rights of appeals and we are hopeful, with all due respect to Chief Judge Billings, our view will ultimately prevail. Perhaps our view may prevail at the District Court also.

Before we discuss why we believe Chapter 12 does not require that an over-secured creditor retain a lien on unsurrendered property after we have determined it will receive the value of its allowed claim from surrendered collateral,

transferring collateral up to the full value of the creditor's allowed claim without the additional requirement that creditor must also retain a lien on the unsurrendered property.[9] (Debt-

we pause to dispose of Bank's Fifth Amendment taking argument. Bank's argument, *albeit sub silentio,* suggests that to give Bank only so much of its collateral as would satisfy its allowed claim without also giving them a lien on the unsurrendered collateral constitutes a substantive taking violation of the Fifth Amendment. We acknowledge Congress' power to make uniform bankruptcy laws under Article 1, § 8 of the United States Constitution is subject to the Fifth Amendment. *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 589, 55 S.Ct. 854, 863, 79 L.Ed. 1593 (1935) (held the 1934 Frazier–Lemke Act, Pub.L. No. 73–486, 48 Stat. 1289, *et seq.,* effected an unconstitutional taking because it abridged five foreclosure rights created under applicable state law, *id.,* 295 U.S. at 594–95, 55 S.Ct. at 865–66, for secured lenders on farm property without preserving the lienholder's right to obtain payment of underlying debt through sale of encumbered property. *Id.,* 295 U.S. at 601–602, 55 S.Ct. at 869) *reh'g denied, Louisville Joint Stock Land Bank v. Radford,* 296 U.S. 661, 56 S.Ct. 82, 80 L.Ed. 471 (1936). Justice Brandeis in *Wright v. Vinton Branch of the Mountain Trust Bank of Roanoke, Virginia,* 300 U.S. 440, 470, 57 S.Ct. 556, 566, 81 L.Ed. 736, 747–748 (1937), held an amended Frazier–Lemke Act, 49 Stat. 943, was constitutional, although it preserved only three of the five state law created foreclosure rights. *Id.* Specifically, *Wright* upheld the Acts' three year stay of the foreclosure proceedings and preservation of mortgagor's possession provided that the mortgagor pays rent. Finally, the United States Supreme Court upheld a distressed bankrupt farmer's right to redeem property at a value fixed by the bankruptcy court; "{t}here is no constitutional claim of the creditor to more than that." *Wright v. Union Central Life Insurance Co.,* 311 U.S. 273, 278, 61 S.Ct 196, 200, 85 L.Ed. 184, 187 (1940) *reh'g denied, Wright v. Union Central Life Insurance Co.,* 312 U.S. 711, 61 S.Ct 445, 85 L.Ed. 1142 (1941). *See, Travelers Ins. Co. v. Bullington,* 878 F.2d 354, 358–360 (11th Cir. 1989) (§ 506 application to reduce under-secured creditor's allowed claim to value of collateral for purposes of § 1225(a)(5) withstands Fifth Amendment challenge), *reh'g denied en banc, Travelers Ins. Co. v. Bullington,* 889 F.2d 276 (11th Cir.1989); *Dahlke v. Doering,* 94 B.R. 569, 571–72 (D.Minn.1989) (11 USC § 1225's authorization of a reduction of secured claim to appraised market value of collateral is not an unconstitutional taking of secured creditor's property in violation of Fifth Amendment). We conclude from *Vinton, Union Central, Bullington,* and *Dahlke* that a Bankruptcy Court may determine and limit the value of an over-secured or under-secured creditor's interest in collateral without violating the Fifth Amendment.

The question then becomes whether an over-secured creditor is entitled to receive more than the partial surrender of collateral equal to the fixed cram down value of its allowed claim, *i.e.,* is the over-secured creditor also entitled to retain a lien on the unsurrendered collateral in the event the creditor's sale of its surrendered collateral proves to be lower than the Court's valuation?

We begin by a review of the applicable statutes. The determination of a creditor's secured status is governed by 11 USC § 506, which provides in pertinent parts:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
(b) To the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 USC §§ 506(a) and (b). The contents of a Chapter 12 plan under § 1222 may:

(b)(7) provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor;
 (8) provide for the sale of all or any part of the property of the estate or the distribution of all or any part of the property of the estate among those having an interest in such property. . . .

11 USC §§ 1222(b)(7) and (8). A Court must confirm a Chapter 12 plan with respect to each allowed secured claim under § 1225 if:

(C) the debtor surrenders the property securing such claim to such holder. . . .

11 USC § 1225(a)(5)(C).

The District Court's Decision is devoid of any discussion about the application of §§ 506(a) and (b) in so far as it determines the full amount of Bank's allowed secured claim. We are aware of the conflict between general sections of the Code, namely, § 506, and other more specific provisions like § 1322(b)(2). But we don't believe in this matter § 506 conflicts with the Chapter 12 provisions. *See, In re Mitchell,* 125 B.R. 5 (Bkrtcy.D.N.H.1991) (Excellent discussion of bifurcation issue § 1322(b)(2).).

Under § 506, an allowed claim of a creditor secured by a lien on property, in which the estate has a legal or equitable interest under § 541, is secured to the extent of the value of the secured creditor's interest in the property.

An under-secured creditor's allowed secured claim is reduced to the value of the property and the balance of its allowed claim is unsecured. 11 USC § 506(a).

We submit § 506 is not limited to under-secured creditors with allowed secured claims but also applies to over-secured creditors with allowed secured claims. Section 506(b) tells us that after deducting the trustee's costs and expenses under § 506(c), the over-secured creditor with an allowed claim is entitled to interest and, if the claim arose by agreement, fees, costs or charges provided for under the agreement. The District Court's Decision ignores what happens to the excess collateral after an over-secured creditor with an allowed secured claim has been provided the value of its entitlement under § 506. The excess collateral does not belong to the satisfied over-secured creditor; instead, it passes to the estate to be used as the debtor deems is appropriate.

The District Court offered three reasons for its conclusion that a Chapter 12 debtor must surrender all property to an over-secured creditor under § 1225(a)(5)(C):

1. The plain meaning of "the property" in § 1225(a)(5)(C) mandates a surrender of "all" property;
2. Debtor's contrary argument that § 1225(a)(5)(C) does not require a surrender of all property as recognized under §§ 1222(b)(7) and (8) rejected because § 1225, being more specific and mandatory, overrides § 1222's permissive provisions; and,
3. Section 1225(a)(5)(B) and not § 1225(a)(5)(C) is the correct provision to cram-down a non-consenting over-secured creditor, and the former requires the creditor be granted a lien on the unsurrendered collateral in the event the surrendered property does not satisfy the full amount of its secured claim.

*Id.,* 109 B.R. at 630–31.

We are troubled by the District Court's application of the plain meaning rule to conclude "the property" in § 1225(a)(5)(C) means the same as "all property." A short review of statutory construction appears in order.

Our search for legislative intent in every case involving statutory construction begins with the actual language. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539, 561 (1975) (Powell, J., concurring: "The starting point in every case involving construction of a statute is the language itself."), *reh'g denied, Blue Chip Stamps v. Manor Drug Stores,* 423 U.S. 884, 96 S.Ct. 157, 46 L.Ed.2d 114 (1975). *Accord, Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685, 105 S.Ct. 2297, 2301–02, 85 L.Ed.2d 692, 696–97 (1985); *Burke Mountain Recreation, Inc. v. Vermont Development Credit Corporation (In re Burke Mountain Recreation, Inc.),* 64 B.R. 799, 802 (Bkrtcy.D.Vt.1986).

The judicial determination of the literal meaning of a statute's language is known as the "plain meaning rule," which provides:

Where the language is plain and admits of no more than one meaning, the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion. *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct 192, 194, 61 L.Ed. 442, 453 (1917). *Accord, Lubinsky v. Fair Haven Zoning Board,* 148 Vt. 47, 49–50, 527 A.2d 227 (1986); *Cavanaugh v. Abbott Laboratories,* 145 Vt. 516, 529–30, 496 A.2d 154 (1985) (*citing, Heisse v. State,* 143 Vt. 87, 89, 460 A.2d 444, 445 (1983)).

Although the mandate of the United States Supreme Court is clear that we must determine and give effect to legislative intent, they send us contradictory signals on how far, if at all, we may proceed beyond a Statute's unambiguous and plain meaning.

One line of cases suggests that once we ascertain the statute's meaning is plain, then that meaning of the legislation should be conclusive. *See, Gemsco, Inc. v. Walling,* 324 U.S. 244, 260, 65 S.Ct. 605, 614–15, 89 L.Ed. 921, 933 (1945) ("The plain words and meaning of a statute cannot be overcome by a legislative history which, through strained processes of deduction from events of wholly ambiguous significance, may furnish dubious bases for inference in every direction."); *Cavanaugh v. Abbott Laboratories,* 145 Vt. 516, 530, 496 A.2d 154 (1985) (refused to go beyond the plain meaning of a statute to consider minutes of legislative committees as legislative history for additional indicia of legislative intent: "Where statutory language is clear and unambiguous in its meaning, as in the present case, we will look no further in an effort to determine a contrary legislative intent.") (footnote omitted); *Burke Mountain Recreation, Inc. v. Vermont Development Credit Corporation (In re Burke Mountain Recreation, Inc.),* 64 B.R. 799, 802 (Bkrtcy.D.Vt.1986) ("When interpreting statutes, the Court is to give effect to the intent of the legislature. It is this intent that constitutes the law. If the language is plain, the intent must be ascertained from the language itself.") (citations omitted); *In re Keinath Brothers Dairy Farm,* 71 B.R. 993 (Bkrtcy.E.D.Mich.1987) (excellent case for analysis of conflicting United States Supreme Court and Federal cases representing both schools, i.e., those that permit further inquiry, and those that do not, when plain meaning rule is applicable; held plain language would be given effect notwithstanding contrary language in legislative history).

Another line suggests that when the literal terms of the statute are not ambiguous, Courts should continue their inquiry beyond a statute's plain meaning. Under appropriate circumstances, they ought to test the statute's plain meaning with its legislative history, policy, and overall statutory scheme. *See, Arizona Governing Comm. for Tax Deferred Annuity & Deferred Compensation Plans v. Norris,* 463 U.S. 1073, 1108, 103 S.Ct 3492, 3511, 77 L.Ed.2d 1236, 1264 (1983) (O'Connor, J., concurring) ("Our polestar ... must be the intent of Congress, and the guiding lights are the language, structure, and

legislative history of [the Act]."); *Watt v. Alaska,* 451 U.S. 259, 265–66, 101 S.Ct 1673, 1677, 68 L.Ed.2d 80, 88 (1981) ("{a}scertainment of the meaning apparent on the face of a single statute need not end the inquiry. This is because the plain meaning rule is 'rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists.'") (citations and footnote omitted) (quoting *Boston Sand Co. v. United States,* 278 U.S. 41, 48, 49 S.Ct 52, 73 L.Ed. 170 (1928) (Holmes, J.)); *Train v. Colorado Public Interest Research Group, Inc.,* 426 U.S. 1, 9–10, 96 S.Ct 1938, 1942, 48 L.Ed.2d 434, 441 (1976) ("To the extent that the Court of Appeals excluded reference to the legislative history of [the Act] in discerning its meaning, the court was in error. As we have noted before: 'When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no "rule of law" which forbids its use, however clear the words may appear on "superficial examination."'") (citation omitted) (quoting *United States v. American Trucking Ass'ns.,* 310 U.S. 534, 543–544, 60 S.Ct 1059 [1063–64], 84 L.Ed. 1345, [1350–51] (1940)). *See also,* N. Singer, *Sutherland Statutory Construction,* § 48.01, at 278 (revised 4th Ed.1984) ("{t}he plain meaning rule ... is not to be used to thwart or distort the intent of Congress by excluding from consideration enlightening material from the legislative files.").

In rare cases where the literal reading of the statute is unambiguous, Courts will seek extrinsic evidence of legislative intent when the literal interpretation makes little sense, *Chemical Mfrs. Ass'n v. Natural Resources Defense Council, Inc.,* 470 U.S. 116, 125–26, 105 S.Ct 1102, 1108, 84 L.Ed.2d 90, 98–99 (1985), renders the statute ineffective or leads to irrational consequences, *In re G.F.,* 142 Vt. 273, 279, 455 A.2d 805, 808 (1982) (quoting *Audette v. Greer,* 134 Vt. 300, 302, 360 A.2d 66, 68 (1976)), leads to an absurd consequence, *Russell v. Lund,* 114 Vt. 16, 22, 39 A.2d 337 (1944), or is otherwise demonstrably at odds with the true intentions of the statute's drafters. In such cases, the intention of the drafters, rather than the literal language, controls. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 1030–31, 103 L.Ed.2d 290 (1989), *quoting Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct 3245, 3250, 73 L.Ed.2d 973, 981 (1982).

The statutory provision in the matter *sub judice* counsels against a *pro forma* application of the plain meaning statutory construction because the plain meaning of "the property" under § 1225(a)(5)(C) does **not** say "all" property as the District Court assumed: "§ 1225(a)(5)(C)'s express statutory language require[s] that all of the property securing the claim be surrendered." *First Brandon National Bank v. Kerwin–White, supra,* 109 B.R. at 631.

Alternatively, this is an appropriate case to test the District Court's application of the statute's plain meaning with its legislative history, policy, and overall statutory scheme. *See, Arizona Governing Comm. for Tax Deferred Annui-*

*ty & Deferred Compensation Plans v. Norris, supra.*

The obvious Congressional purpose behind the enactment of a specific provision for family farmers is to overcome some of the major difficulties family farmers encountered in their attempt to reorganize under Chapter 11. *See,* 132 Cong.Rec. S15075 (Oct. 3, 1986) (statement of Senator Thurmond); *id.,* at S15076 (statement of Senator Grassley). Unlike the District Court, *First Brandon National Bank v. Kerwin–White, supra,* 109 B.R. at 631, we cannot ignore such clear evidence of Congressional purpose and, where appropriate, we must construe specific provisions in Chapter 12 to accomplish the rehabilitative goals intended by Congress. *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 210–211, 108 S.Ct. 963, 970, 99 L.Ed.2d 169, 182 (1988).

The District Court's application of statutory construction to the end that holds the mandatory provision of § 1225(a)(5)(C) takes precedent over the "permissive provisions" of §§ 1222(b)(7) and (8) is likewise mistaken for at least two reasons.

First, before one can turn to the statutory construction principal that a more specific provision takes precedence over a general provision, one must find that such a construction is warranted. The District Court's logic simply banishes §§ 1222(b)(7) and (8) from the statute. Not only is that result an impermissible deprivation of the rights Congress granted to Chapter 12 debtors, but it is an unwarranted conclusion. In our view, there is no express conflict between these provisions. The District Court simply overlooked the fact that § 1225(a)(5)(B)'s lien retention provision and § 1225(a)(5)(C)'s property surrendering provision are not restricted by the statute to over-secured and under-secured creditors respectively. These provisions do not prevent a debtor from surrendering collateral to an over-secured creditor in full satisfaction of the over-secured creditor's allowed claim. 11 USC §§ 1225(a)(5)(B) and (C), and 11 USC §§ 1222(b)(7) and (8) must be viewed as a tandem of rights not isolated parts and pieces of the whole.

Moreover, §§ 1225(a)(5)(B) and (C) must also be viewed *in pari materia* with mirroring provisions of 11 USC §§ 1325(a)(5)(B) and (C). *See,* 2A *Sutherland Statutory Construction,* §§ 51.02, 51.05 (Sands 4th Ed.1984). Indeed, Chapter 12's legislative history informs us it was "closely modeled after existing Chapter 13." H.R.Conf. Rep. No. 958, 99th Cong.2d Sess. 48, 1986 U.S.Code Cong. & Admin.News 5227, 5246, 5249. *Accord, In re Janssen Charolais Ranch, Inc.,* 73 B.R. 125, 126 (Bkrtcy.D.Mont.1987) (Chapter 13 cases and legislative history helpful in interpreting Chapter 12 cases). Pertinent legislative history for § 1325(a)(5)(B) confirms a Chapter 13 debtor may transfer "any property" up to the value of the secured creditor's allowed claim and the creditor's lien is satisfied to the extent the transferred property satisfies the allowed claim.

Unless the secured creditor accepts the plan, the plan must provide that the secured creditor retain the lien securing the creditor's allowed secured claim in addition to receiving value, as of the effective date of the plan of property to be distributed under the plan on account of the claim not less than the allowed amount of the claim. To this extent, a secured creditor in a case under chapter 13 is treated identically with a recourse creditor under section 1111(B)(1) of the House amendment **except that the secured creditor in a case under chapter 13 may receive *any property* of a value as of the effective date of the plan equal to the allowed amount of the creditor's secured claim rather than being restricted to receiving deferred cash payments. Of course, the secured creditor's lien only secures the value of the collateral and to the extent property is distributed of a present value equal to the allowed amount of the creditor's secured claim the creditor's lien will have been satisfied in full. Thus the lien created under section 1325(a)(5)(B)(i) is effective only to secure deferred payments to the extent of the amount of the allowed secured claim.**

124 Cong.Rec. H11107 (daily ed. Sept. 28, 1978); S17423 (daily ed. Oct. 6, 1978); remarks of Rep. Edwards and Sen. DeConcini) (emphasis ours). *See, Simmons v. Savell (In re Simmons),* 765 F.2d 547, 554, n. 8 (5th Cir.1985) (other property may be conveyed to the secured creditor, in lieu of further payments, to meet the § 1325(a)(5)(B)(ii) standard. Because this alternative permits modification of a secured creditor's rights without its consent, it is often called the cram down approach to confirmation.). Chapter 13's legislative history is clear; there is to be no lien to the extent the value of the property tendered to the creditor satisfies the creditor's allowed secured claim. The same approach may be exercised in Chapter 12 under §§ 1225(a)(5)(B) or (C).

The Court in *In re Stockwell,* 33 B.R. 303 (Bkrtcy.D.Or.1983) acknowledged other property may be conveyed to the secured creditor under § 1325(a)(5)(B). *Id.,* 33 B.R. at 305. Contrary to the position we are advocating, however, *Stockwell* concluded subsection (B) may be used only when the debtor retains property and subsection (C) may be used only when debtor surrenders all collateral.

> If subsection [1325(a)(5) ](B) could be utilized by conveying to the creditor the very property which secured the claim, there would be no need for subsection [1325(a)(5) ](C). Rather than concluding that subsection (C) duplicates subsection (B), it is more reasonable to conclude that subsection (B) may be utilized when the debtor wishes to retain the property and subsection (C) may utilized when the debtor does not intend to retain an interest in the property.

*Id.,* 33 BR at 306. We disagree with *Stockwell's* conclusions because § 1325(a)(5)(C) does not say "all" property must be surrendered or all property must be retained under

§ 1325(a)(5)(B). *Stockwell,* as well as our District Court on comparable provisions §§ 1225(a)(5)(B) and (C) under review, erroneously assume § 1325(a)(5)(B) is only for over-secured creditors and § 1325(a)(5)(C) is only for under-secured creditors. If Congress had meant to limit the scope of those provisions, it would have expressed such limitations. Neither §§ 1325(a)(5)(B) and (C) nor 1225(a)(5)(B) and (C) prohibit a debtor from surrendering collateral to an over-secured creditor up to the full value of its allowed secured claim. To the extent the surrendered collateral extinguishes the allowed secured claim, there is no debt or allowed claim left for a lien to satisfy, nor is there any reason to prohibit debtor's use of the excess unsurrendered collateral in its plan to satisfy other creditors.

11 USC § 1222(b)(8) must also be construed *in pari materia* with comparable provisions in Chapter 11 because it was taken from 11 USC § 1123(a)(5)(D), which provides:

> (D) sale of all or any part of the property of the estate, either subject to or free of any lien, or the distribution of all or any part of the property of the estate among those having an interest in such property of the estate ...

*Id.*

Chapter 11 has long recognized "asset payment plans," *i.e.,* surrender of collateral to the holder of a secured claim for a credit against the allowed claim. *See, In re Simons,* 113 B.R. 942, 946–47 (Bkrtcy.W.D.Tex.1990) (Chapter 11 plan that allowed less than all of the real property collateral to be surrendered to over-secured creditor as cancellation of a portion of secured claim, and allowed balance to be paid over time was fair and equitable); *In re Fursman Ranch,* 38 B.R. 907, 910 (Bkrtcy.W.D.Mo.1984) (confirmed Chapter 11 plan where secured creditor was conveyed a portion of collateral and paid in cash for balance. Court also stated that in the event the creditor's commercially reasonable sale did not yield the values set by the Court, then the creditors may ask for a reconsideration of their claims).

Absent an express intention otherwise, there is nothing to support an assumption Congress did not want the tool available to a Chapter 11 debtor under § 1123(a)(5)(D) to also be available to Chapter 12 or 13 debtors under the comparable provisions of 11 USC §§ 1222(b)(7) and (8) and 1322(b)(8).

The majority of Courts that have addressed this Chapter 12 issue allow partial surrender of collateral to over-secured creditors in full satisfaction of their allowed secured claim after valuation. *In re Cansler,* 99 B.R. 758 (W.D.Ky. 1989) (refused to follow District Court's Decision in *Federal Land Bank of Columbia v. Massengill (In re Massengill),* infra, and held Farm Credit Act did not bar Chapter 12 debtors from surrendering their land bank stock in exchange for corresponding reduction in debt to land bank under § 1225(a)(5)(C)); *Greseth v. Federal Land Bank of St. Paul,* 78 B.R. 936, 943 (D.Minn.1987) (§§ 1225(a)(5)(C) and 1222(b)(7)

and (8) specifically allow a Chapter 12 debtor to surrender part of its land bank stock in satisfaction of its debt to land bank but required retention of stock in the amount of 5% of the adjusted value of the mortgaged land); *In re Neff,* 89 B.R. 672, 673–75 (Bkrtcy.S.D.Ohio 1988) (same as *Cansler*), *modified on other grounds,* 96 B.R. 800, 802 (Bkrtcy.S.D.Ohio 1989); *In re Ivy,* 86 B.R. 623, 624–625 (Bkrtcy.W.D.Mo.1988) (same); *Matter of Arthur,* 86 B.R. 98, 101–103 (Bkrtcy.W.D.Mich.1988) (followed Bankruptcy Judge Small's rationale in *In re Massengill, infra* and permitted surrender of land bank stock to land bank; however, Court did not determine value of stock, instead "relegated their allowed claims regarding the stock from secured to unsecured."); *In re Caraway,* 95 B.R. 466, 467 (Bkrtcy.W.D.Ky.1988) (partial surrender of collateral to secured creditor permissible after § 506 valuation); *In re Massengill,* 73 B.R. 1008, 1012 (Bkrtcy.E.D.N.C.1987) (Chapter 12 debtor could surrender land bank stock upon confirmation in satisfaction of secured debt), *reversed in part on other grounds, Federal Land Bank of Columbia v. Massengill (In re Massengill),* 100 B.R. 276 (E.D.N.C.1988); *In re Indreland,* 77 B.R. 268, 273 (Bkrtcy.D.Mont.1987) ("a transfer of property, either in part or in whole to satisfy a secured claim is permitted in Chapter 12, under 1222(b)(7) or (8) and 1225(a)(5)(B) or (C)."); *In re O'Farrell,* 74 B.R. 421, 423 (Bkrtcy. N.D.Fla.1987) (overruled land bank's objection to debtor's § 1222(b)(8) plan provision for the severance of dairy improvements and surrounding acreage); *In re Mikkelsen Farms, Inc.,* 74 B.R. 280, 291–292 (Bkrtcy.D.Or.1987) (held transfer of property in kind permissible under §§ 1222(b)(7) and 1225(a)(5)(B); Court, however, rejected debtor's plan § 506 valuation).

Bankruptcy Judge A. Thomas Small, a draftsperson of Chapter 12 and author of *Massengill,* explains the rationale for the majority position:

> Chapter 12 is "designed to give family farmers facing bankruptcy a fighting chance to reorganize their debts and to keep their land." H.R.Rep. No. 99–958, 99th Cong., 2d Sess. 48 (1986), U.S.Code Cong. & Admin.News 1986, pp. 5227, 5249. It is emergency legislation which suspends a number of creditor protections which are available in chapter 11 to facilitate family farmer reorganization. The essence of chapter 12 reorganization is the debtor's ability to deal with secured claims. In that regard, the debtor has great flexibility and many options. One method is found in 11 U.S.C. § 1222(b)(8) .... **Furthermore, surrender of property securing a claim to the holder of the secured claim is specifically recognized in the chapter 12 confirmation requirements of 11 U.S.C. § 1225(a)(5)(C) as a proper way to treat a secured claim.**

*In re Massengill, supra,* 73 B.R. at 1012 (Bkrtcy. E.D.N.C.1987) (footnotes omitted; emphasis ours), reversed in part on other grounds, *Federal Land Bank of Columbia v. Massengill (In re Massengill),* 100 B.R. 276 (E.D.N.C.1988).

The minority position, as represented by our District Court, requires a Chapter 12 family

farmer to surrender "all" property under § 1225(a)(5)(C). Alternatively, a Chapter 12 debtor must transfer sufficient property to satisfy the value of the over-secured creditor's allowed claim, *plus* grant a lien on unencumbered property in the event the creditor's sale of the surrendered property yields less than its allowed claim. *First Brandon National Bank v. Kerwin–White, supra,* 109 B.R. at 630. *See,* 5 *Collier's on Bankruptcy,* ¶ 1225.03[5], pp. 1225–24–1225–26 (15th Ed.1990). (Our disagreement here is not the first time we have disagreed with *Collier's* treatment of a Chapter 12 matter; *see, In re Brileya,* 108 B.R. 444 (Bkrtcy.D.Vt.1989). A brief analysis of the cases cited by District Court and Bank, however, do not support their conclusion.

The lead case cited by Bank and the District Court in support of their minority position is *In re Durr,* 78 B.R. 221 (Bkrtcy.D.S.D.1987). *Durr* recognized the "asset payment plan" available in Chapter 13 also applied to Chapter 12; however, debtor's plan called for a retention of collateral and an exchange of other property to the secured creditor *without* establishing whether the secured creditor would receive "not less than the allowed amount of its secured claim" if a sale of property yield less than the secured creditor's allowed claim. *Id.,* 78 B.R. at 225. One could only speculate what the *Durr* Court would have held if, as in our case, debtor had established the value of the transferred property.

The applicability of *Durr* to the proceeding *sub judice* is further weakened because it relied on Chapter 11 cases *In re Walat Farms, Inc.,* 70 B.R. 330 (Bkrtcy.E.D.Mich.1987) and *In re Elijah,* 41 B.R. 348 (Bkrtcy.W.D.Mo.1984). *Elijah* appears to have misread the 11 USC § 1111(b) election to require either a return of all collateral or part of the collateral plus a lien to secure any deficiency for a presumed over-secured creditor. *Id.,* 41 B.R. at 351–352. Moreover, the *Durr* Court ignored that the indubitable equivalent rule and the § 1111(b) election were eliminated under Chapter 12. *See, In re Massengill, supra,* ("(i)n chapter 12 there is no voting, no 'absolute priority rule,' no adequate protection of 'lost opportunity costs,' no time limit on repayment of secured claims, no § 1111(b) election, and no § 363(f) requirements that must be met in order to sell farm land or farm equipment free of liens."). *Id.,* 73 B.R. at 1012, n. 10. Thus, the cornerstone of Bank's and District Court's position is seriously undermined because *Durr's* continued vitality is doubtful.

Bank also cites *In re Townsend, Jr.,* 90 B.R. 498, 502 (Bkrtcy.M.D.Fla.1988) to support its conclusion that "a debtor cannot cram-down by 'surrendering' part of a secured lender's collateral pursuant to 1225(a)(5)(C) since a surrender contemplates a transfer of *all* the collateralized property." *Accord, First Brandon National Bank v. Kerwin–White, supra,* 109 B.R. at 630. Bank misleads the Court because that is *not all Townsend* held:

[Section] 1225(a)(5) authorizes confirmation over the objection of a secured creditor only if the Court finds that all the property securing such claim is surrendered to the creditor **or if the plan contemplates the distribution of property having a present value equal to the allowed amount of the secured claim.** *Id.,* 90 B.R. at 502 (emphasis ours) (rejected debtor's plan because the value debtor proposed to distribute to was less than the amount of the secured creditor's allowed claim).

Bank also cited *In re Lairmore,* 101 B.R. 681 (Bkrtcy.E.D.Okl.1988) in support of their position. *Lairmore* approved in principle a § 1225(a)(5)(B)(i) plan that proposed a surrender of part of the lienholder's collateral plus a "lien retention" of additional property subject to a first mortgage in satisfaction of the secured creditor's allowed claim. *Lairmore* did so only because a valuation hearing had not yet been held. Moreover, *Lairmore* recognized the lien retention requirement "protects the secured creditor only until it receives the value of its allowed claim." *Id.,* 101 B.R. at 684.

We side with the majorities' ruling that a partial asset payment plan in full satisfaction of a creditor's allowed secured claim is permitted under 11 USC §§ 1222(b)(8) and 1225(a)(5)(C) because it fulfills the intent behind Chapter 12 as well as its legislative history and corresponding sister provisions found in Chapter 11 and 13. If property has been transferred to the over-secured creditor and it equals the value the Bankruptcy Court has assigned the creditor's allowed secured claim, then there is no need for a lien. A lien is only needed if the property transferred is less than the creditor's allowed secured claim.

Lastly, we address the District Court's assertion "if less than all the collateral or other property is distributed to the most senior creditor in satisfaction of the debt without retention of the lien, the creditor might not realize the full amount of his original secured claim and thus, can genuinely claim that he is being discriminated against." *First Brandon National Bank v. Kerwin–White, supra,* 109 B.R. at 630.

The District Court's holding only makes sense if we were dealing with an under-secured creditor with an allowed claim, *i.e.,* the debtor would be required to turn over "all" of the property in satisfaction of the allowed secured claim and would have an allowed unsecured claim for the balance.

Furthermore, the District Court's ruling gives the over-secured creditor too much property if a Chapter 12 debtor conveyed "all" the property under § 1225(a)(5)(C). Alternatively, under § 1225(a)(5)(B), the District Court's Decision promotes discrimination because the creditor with an allowed secured claim not only receives property equal to the full value of its claim *but also* receives a lien on property in the event the Court's valuation on the surrendered collateral proves wrong. As discussed *supra,* the over-secured creditor is entitled only to the value of its allowed secured claim as provided under 11 USC §§ 502, 506. If the over-secured creditor with an allowed secured claim has been given

or's view is known in Chapter 12 jargon as "eat dirt.").

2. Bank argues District Court's reversal and remand requires a new confirmation hearing on a newly presented plan with newly presented evidence. Debtor counters its proposed plan modification complies with the District Court's requirement that Bank retain a lien on the unsurrendered property as security for any deficiency.[10]

3. Bank challenges Debtor's eligibility as a "family farmer" under § 101(17). Debtor says Bank waived its right to contest Debtor's eligibility.[11]

4. Bank argues our valuation finding on the Cornwall property is clearly erroneous while Debtor says our original valuation of the Cornwall property was correct.[12]

5. Bank says the potential deficiency that is secured by the proposed lien on the unsurrendered collateral must also include interest, late fees, all costs of sale, and interim tax and insurance expenses that may result from a sale of the surrendered property. Debtor counters Bank failed to challenge the $86,500.00 allowed amount of its claim (except for adding attorneys' fees and appraisal costs that were denied by the District Court) and has therefore

waived entitlement of these additions to its allowed claim.

6. In the event we approve Debtor's proposed modification, Bank asks that we also require judicial review prior to sale of the surrendered property to assure Bank the sale is "commercially reasonable." Debtor counters there is no Code provision that requires Court supervision over the conduct of a sale of surrendered property.

## ISSUES PRESENTED

1. Whether the potential deficiency secured by the proposed lien on the unsurrendered collateral must include interest, late fees, all costs of sale, and interim tax and insurance expenses that may result from the sale of the surrendered property?

2. Whether the Court ought to condition its approval of Debtor's proposed plan modification upon our supervision over Bank's sale of its surrendered collateral to assure the sale is "commercially reasonable?"

## DISCUSSION

Does the deficiency secured by the lien[13] on the unsurrendered collateral include interest, late fees, all costs of sale, and interim tax and insurance expenses after we

property equal to the value of its allowed claim, where is the debt? Clearly the other creditors suffer by such an arrangement because if the lien was not given, the property could be used to satisfy other creditors.

In closing, what point is there for a Bankruptcy Court to render a valuation on an over-secured creditor's allowed claim or a valuation of the proposed property transfer if there is no finality to its decision? If the over-secured creditor raises the issue that the surrendered collateral does not equal its claim or it might suffer a deficiency if and when the surrendered collateral is sold, then the Court must make sure the plan surrenders sufficient collateral to address those concerns prior to the plan confirmation. That is precisely what we did. But Bank wanted more and the District Court's Decision, as it presently stands, agreed. The District Court's imposition of the additional requirement of a lien retention on unsurrendered collateral, when we have determined the over-secured creditor has received collateral equal to its allowed secured claim, destroys the finality our

claim valuation and plan confirmation decisions deserves.

10. *First Brandon National Bank v. Kerwin–White, supra.* As noted *supra,* we previously ruled a modification hearing, rather than a new plan and de novo hearing, would suffice.

11. The District Court's ruling that Bank waived its Debtor's eligibility defense, *First Brandon National Bank v. Kerwin–White, supra,* 109 B.R. at 628–29, is now the "Law of the Case." *See, United States v. Cirami, supra,* 563 F.2d at 32.

12. As noted *supra,* we previously ruled the evidentiary record was adequate for purposes of revisiting our Cornwall property valuation and issued our Decision. *Memorandum of Decision on Valuation,* Conrad, B.J., June 21, 1990.

13. Bank sought "reassurance" that it is entitled to a first lien priority on the unsurrendered collateral *vis a vis* Debtor's second and third real property mortgagees. That is our understanding of Debtor's modification.

have fixed the value of the over-secured creditor's allowed secured claim? The short answer is no.

We deny Bank's request to these additional costs for three reasons. First, for the same reason the District Court denied Bank's request for attorney fees *supra*, we cannot allow a request to add late fees, all costs of sale, and interim tax and insurance, i.e., Bank's agreements provide for such items only in the event of foreclosure action and no such action was brought prior to Debtor's bankruptcy filing. See, *First Brandon National Bank v. Kerwin–White, supra*, 109 B.R. at 633. Second, Bank's request to add interest is untimely and deemed waived because it was made after we fixed the value of Bank's allowed secured claim under §§ 502 and 506. This aspect of our determination was not appealed to the District Court. Third, the District Court's ruling that Bank is entitled to a lien to secure a deficiency encompasses only the shortfall between what Bank realizes from a sale of surrendered property and its allowed secured claim.

Outside of bankruptcy, a consensual over-secured creditor is entitled to receive exactly what it bargained for under its agreements. The same is true inside bankruptcy, *i.e.*, the over-secured creditor gets the value of its allowed secured claim under §§ 502 and 506, and, to the extent the agreements giving rise to its allowed claim expressly provide, reasonable fees, costs or charges. Additionally, the over-secured creditor with an allowed secured claim in bankruptcy is entitled to interest whether or not provided for by its agreements:

> (b) To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 USC § 506(b). *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (a non-consensual creditor is entitled to receive post-petition interest on allowed over-secured claim under § 506(b). Consensual over-secured creditors with allowed claims are entitled to post-petition interest, reasonable fees, costs, and charges under § 506(b) to the extent provided for in their agreements).

*Ron Pair* and § 506(b) instruct us to treat "interest on such claim[s]" separately from "reasonable fees, costs, and charges," i.e., an over-secured creditor with an allowed secured claim is entitled to interest as a matter of law, whereas "reasonable fees, costs, or charges" must arise by an agreement. 11 USC § 506(b); *United States v. Ron Pair Enterprises, Inc., supra*. Thus, we meet Bank's request for interest separately from its request for late fees, all costs of sale, and interim tax and insurance expenses.

 We first address Bank's request for late fees, all costs of sale, and interim tax and insurance expenses. In the proceeding sub judice, the operative agreements are the parties' promissory note-security agreements and the mortgage deed. The front side of the note form incorporated the Mortgage Deed:

> I give you a security interest in the property described below. The rights I am giving you in this property and the obligations this agreement secures are defined on the reverse side of this form. ...

The reverse side of the note form states: DEFAULT AND REMEDIES—I will be in default on this agreement if any event specified in the 'Default' paragraph of the note occurs. If I am in default on this agreement or on any secured obligation, you have all of the remedies provided in the note or other obligation and all of the remedies provided below *and by law*. You may:

> (b) take immediate possession of the property and sell, lease or dispose of it, as provided by law. You may apply the proceeds of disposition to your expenses (including costs of repossession, attorneys' fees (if permitted), repairs (if necessary) and costs of sale) and then to payment of the secured obligations.

(Underscore in original). The Mortgage Deed provides:

> In case this mortgage shall be foreclosed and a decree obtained thereon, there shall be included in such decree a reasonable solicitor's fee, in addition to all taxable costs allowed by law.

As noted *supra,* the District Court held Bank was not entitled to attorney fees because its agreement "effectively limits the grant of attorneys' fees to acts pertaining to foreclosure, [the agreement] cannot be interpreted as authorizing attorneys' fees in bankruptcy proceedings...." *First Brandon National Bank v. Kerwin–White, supra,* 109 B.R. at 632–33. Accord, *In re Trombley,* 31 B.R. 386, 388 (Bkrtcy. D.Vt.1983) (over-secured creditor is not entitled to attorney fees under § 506(b) because it did not initiate foreclosure action as required under its mortgage note agreement); *In re International Coins & Currency, Inc.,* 26 B.R. 256, 259–60 (Bkrtcy. D.Vt.1982) (attorney fees allowed where required criteria in agreement was met).

The District Court's rationale for its denial of Bank's attorney fees wholly applies to our denial of Bank's request to add late fees, all costs of sale, and interim tax and insurance expenses. Bank's agreements provide for such charges only in the event it initiates a foreclosure action, and no such action was brought here.

■ Moreover, as noted *supra,* the District Court's Decision required that Bank receive a lien on its unsurrendered collateral to secure a potential deficiency that may result from Bank's sale of its surrendered collateral. That deficiency is limited to the amount of short-fall between the allowed fixed secured claim and the sale. Thus, the deficiency does not cover the additional items sought by Bank.

Lastly, the District Court's Decision denying Bank's request for attorney fees is further evidence that the District Court did not intend Bank would be permitted to add late fees, all costs of sale, and interim tax and insurance expenses to its fixed allowed claim. As we have just said, the District Court's denial of Bank's attorney fees runs directly to our denial today. To permit Bank's request to add costs in the event there is a deficiency would in effect allow Bank to succeed on an approach that the District Court directly prohibited; if its not in the parties agreement, the creditor does not get it. Bank's request is nothing more than a hollow attempt to get around the limitations set by its agreements, § 506, and the District Court's instructions.

■ Bank's request for interest is addressed next. In the proceeding *sub judice,* we had fixed the value of Bank's secured allowed claim at $84,600. Bank did not challenge that fixed amount either before or during its appeal to the District Court. Its right to do so now is considered waived.

The District Court's Decision is not a license for Bank to add items it had failed to anticipate before we fixed its allowed secured claim. As we just observed with respect to our denial of Bank's request to add certain costs, *supra,* the District Court's Decision instructed that the lien used to secure Bank's deficiency is *limited* to Bank's potential short-fall between a sale of the surrendered collateral and Bank's allowed secured claim. Moreover, the District Court's Decision instructed that we were to re-value certain collateral, not revisit the fixed amount of Bank's allowed secured claim. Thus, we reject Bank's attempt to resurrect its neglected entitlement to interest under § 506(b), and we reject Bank's overreaching of the District Court's limited instructions on remand. Our holding here renders moot Bank's request for guidance on how the proceeds of its sale would be applied against "accumulated interest, late fees and costs of sale."

■ The last issue to be decided is whether we ought to condition our approval of Debtor's plan modification upon judicial approval of Bank's sale of its surrendered collateral to assure the sale is "commercially reasonable."[14] We decline

---

14. Bank's use of the phrase "commercially rea-

sonable" in its argument appears to be a term of

Bank's invitation.[15]

Bank concedes there is no requirement in the Bankruptcy Code for prior Court approval of a creditor's sale of collateral after it has been surrendered in satisfaction of the creditor's allowed secured claim. The absence of such a provision is understandable because neither the Debtor nor its estate has any interest left in property once it has been surrendered to the creditor under a plan of reorganization. Indeed, the surrendered collateral is vested in the creditor upon confirmation. 11 USC § 1227(b).

Bank suggests we should exercise our equitable powers under 11 USC § 105 and require prior judicial approval of Bank's sale because our involvement may limit potential disputes. The history of the litigation between Bank and Debtor suggests otherwise. Assuming *arguendo* our participation would have that desired effect, we decline to do so because it is premature. Our participation may be rendered moot if there is no deficiency.

## CONCLUSION

We conclude on the six claims briefed by the parties in the order presented to us.

First, although we disagree with our District Court's Decision submitting Bank is entitled to retain a lien on the unsurrendered portion of Debtor's collateral, *First Brandon National Bank v. Kerwin–White, supra,* 109 B.R. at 630, we are bound by the District Court's Decision under the "Law of the Case" doctrine.

Second, we have already determined the District Court's reversal and remand does not require a new plan of reorganization and *de novo* hearing because Debtor's proposed plan modification complies with the District Court's lien retention requirement.

Third, the District Court's ruling that Bank had waived its Debtor's eligibility defense, *First Brandon National Bank v. Kerwin–White, supra,* 109 B.R. at 628–29, is now the "Law of the Case."

Fourth, we have already ruled the evidentiary record was adequate for purposes of revisiting our Cornwall property valuation and issued our Decision. *Memorandum of Decision on Valuation,* Conrad, B.J., June 21, 1990.

Fifth, we deny Bank's request to add late fees, all costs of sale, and interim tax and insurance expenses because Bank's agreements provide for such charges only in the event of a foreclosure action, and no such action was brought. We deny Bank's request to add interest because it is untimely and deemed waived.

Sixth, we decline to decide whether approval of Debtor's proposed plan modification should be conditioned upon judicial review of Bank's sale of its surrendered collateral because it would not be debtor's property under § 1227(b), and because such a determination would be premature.

art borrowed from the disposition of goods under Article 9 of the Uniform Commercial Code. "[E]very aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." 9A Vt.Stat.Ann. § 9–504(3). *Chittenden Trust Company v. Maryanski,* 138 Vt. 240, 243–244, 415 A.2d 206 (1980) (Vermont Supreme Court interpreted "commercially reasonable" under § 9–504(3) to place "positive duty" on the secured party to utilize its good faith efforts to maximize the value of the collateral). *See, In re Boring,* 91 B.R. 791, 795, n. 2 (Bkrtcy.S.D.Ohio 1988), *citing, In re American Kitchen Foods, Inc.,* 2 BCD 715 (Bkrtcy.D.Me.1976). Our ruling today does not require us to address whether Vermont Law applies a "commercially reasonable" requirement to real estate transactions.

**15.** This issue provides us with yet another reason for our disagreement with the District Court's conclusion an over-secured creditor is entitled to a surrender of collateral equal to the amount of its allowed secured claim plus a lien retention on unsurrendered collateral to secure a potential shortfall that may arise from a sale of the surrender of collateral. Our reversed bench ruling required Debtor to surrender Bank's collateral to the extent of Bank's allowed secured claim. The amount of Bank's fixed secured claim, total value of Bank's collateral and total amount of surrendered collateral necessary to satisfy Bank's allowed secured claim were determined by that ruling. If there was a potential deficiency between the value of the collateral that was being surrendered and the fixed amount of Bank's allowed secured claim, it was the parties' obligation to litigate it before our ruling. Instead of the finality that ought to have been accorded to our ruling, the District Court's Decision invites a continuation of the very uncertainties such as the one Bank now seeks to avoid.

Lastly, Bank sought "reassurance" that it is entitled to a first lien priority on the unsurrendered collateral *vis a vis* Debtor's second and third real property mortgagees. That is our understanding of Debtor's modification.

Debtor, on notice to Bank, is to submit an Order confirming its modified Chapter 12 plan in accordance with this Decision.